# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

STEPHEN F. GORDON,
an individual,

       *Plaintiff,*

vs.

NEXTEL COMMUNICATIONS, INC.,
a Delaware corporation, and
**MULLEN ADVERTISING, INC.,**
a Massachusetts corporation,

       *Defendants.*

HONORABLE <u>JOHN CORBETT O'MEARA</u>
MAGISTRATE JUDGE <u>DONALD A. SCHEER</u>

CIVIL ACTION NO. <u>00-73201</u>

---

| | | |
|---|---|---|
| ROBERT C. BRANDENBURG   (P28660) | HERSCHEL P. FINK   (P13427) |
| JOHN E. NEMAZI   (P33285) | CYNTHIA G. THOMAS (P43501) |
| **BROOKS & KUSHMAN P.C.** | **HONIGMAN MILLER SCHWARTZ** |
| 1000 Town Center | **AND COHN** |
| Twenty-Second Floor | 2290 First National Building |
| Southfield, Michigan 48075 | Detroit, Michigan 48226 |
| Tel:   (248) 358-4400 | Tel:   (313) 465-7400 |
| Fax:   (248) 358-3351 | Fax:   (313) 962-0176 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---

# STEPHEN F. GORDON'S RESPONSIVE BRIEF
## IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO THE
## MAGISTRATE JUDGE'S REPORT AND
## RECOMMENDATION ON DEFENDANTS' MOTION FOR COSTS
## <u>AND ATTORNEY'S FEES</u>

**BK**
LAW OFFICES
**Brooks & Kushman P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400



## ISSUES PRESENTED

1.      Where the nature of the case is not one that justifies an award of attorney's fees, should the Court exercise its discretion, adopt the Magistrate Judge's Report and Recommendation and refuse such fees?

2.      Where defendants have failed to adequately support its claim for attorney's fees and costs, should the Court adopt the Magistrate Judge's Report and Recommendation and deny those costs?

Plaintiff answers: *Yes*.



LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-i-

# AUTHORITIES RELIED UPON

**Page**

## CASES

*Delta Air Lines, Inc. v. August,*
     450 U.S. 346 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Feltner v. Columbia Pictures Television, Inc.,*
     118 S.Ct. 1278 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fogerty v. Fantasy,*
     510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) . . . . . . . . . . . . . . . 3

*Hensley v. Eckerhart,*
     461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Independent Living Aids v. Maxi-Aids, Inc.,*
     25 F.Supp. 127 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

## STATUTES

15 U.S.C. § 501 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17 USC §107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17 U.S.C. § 505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

17 U.S.C. § 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

17 U.S.C. § 1202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

## MISCELLANEOUS

4 NIMMER ON COPYRIGHT § 13.05 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 6



LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

# I.  INTRODUCTION

Plaintiff Stephen F. Gordon is a self-employed medical artist who has supported himself and his family from the sale and licensing of artwork for approximately the last 20 years. (Exhibit B,[1] ¶ 2.)  He is well-recognized as an artist within the medical community and has been extensively published.  (*Id.*, ¶ 3, *see* Exhibit 27 listing more than 177 publications.)  He receives a substantial income from licensing of his artwork, including the licensing of artwork for advertising purposes.  (*Id.*, ¶ 7.)

On July 1, 2000, he saw a Nextel commercial using his artwork.  (Exhibit A, ¶¶ 8 and 10.)

Commercial (from Exhibit 12)                 Asserted works (Exhs. 1 and 2)






**BK**
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

[1] Exhibits 1-33 and Exhibits A and B are exhibits filed by Gordon in connection with the summary judgment papers.  Exhibits 34-45 and Exhibit C were filed with the opposition to Defendants' Motion for Costs and Attorney Fees.

-1-

He created this artwork in the mid-80s and had registered it with the Copyright Office. (Exhibit A, ¶¶ 3-6.) These drawings include a copyright notice on each illustration. *Id.*

Mr. Gordon immediately contacted his attorneys following the end of the Fourth of July holiday. To try to avoid litigation, Mr. Gordon, through his counsel, sent a letter to Nextel asking them to stop use of his artwork. (Exhibit 13.) Nextel refused to stop use, and did not offer to take a license. (Exhibit 14.) As a result, this lawsuit was filed.

On August 13, 2001, the Court granted defendants' motion for summary judgment and dismissed the case on the basis that Nextel's use of the copyrighted works was "*de minimis*" and "fair use." Defendants sought attorney's fees and costs due to "the objective, unreasonableness of plaintiff's copyright claims and the manner in which plaintiff pursued them." (Defendants' Brief, p. 1.)

Following the dismissal, defendants moved for costs and attorney fees. The motion was referred to Magistrate Judge Donald A. Scheer for his Report and Recommendation.

On December 18, 2001, the Court issued its Report recommending that defendants' motion for costs and attorney fees be denied. Defendants have objected to the Magistrate Judge's Report and again seek to be awarded fees and costs.

However, a review of the facts and law show that Mr. Gordon was at all times reasonable in his pursuit of his claims. Further, defendants fail to provide adequate evidentiary support to allow award of their claim of attorney's fees and costs. Therefore, the Court should exercise its discretion and deny defendants' request.



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

## II.  APPLICABLE LAW

**A.   The Court's Discretion As To Fees**

The Copyright Act gives trial courts discretion to award costs and fees to whichever party prevails. 17 U.S.C. § 505.  The Supreme Court addressed this section, particularly as it is applied to prevailing defendants, in *Fogerty v. Fantasy*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).  The Court rejected the two extreme views that argued for automatic recovery of attorney's fees by the prevailing party or that plaintiffs and defendants were to be treated differently with an award to prevailing defendants only upon a showing of bad faith. Rather, the Court held "prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."  Since defendants commercially used plaintiff's art work without permission, and the case was pursued in good faith, this is not a case where a fee award would be appropriate.

**B.   Copyright Claims**

Plaintiff presented in this case claims for infringement of his copyright. 15 U.S.C. § 501 (a) provides that "anyone who violates any of the exclusive rights of the copyright owner as provided by Section [ ]106. . .is an infringer of the copyright. . . ."

Section 106 provides that "the owner of copyrights under this title has the exclusive rights to do or authorize any of the following: (1) to reproduce the copyrighted work and copies or phono records; (2) to prepare derivative works based on the copyrighted work; (3) to distribute copies or phono records of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending;. . . (5) in the case of literary, musical, dramatic and choreographic works, pantomimes and pictorial, graphic or sculptural works,



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-3-

including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly. . . ." It is undisputed that all these activities occurred in connection with defendant's commercial. Only the fairness and extent of the copying was at issue.

A count was also made under 17 U.S.C. § 1202 dealing with integrity of copyright management information. Sub-sections (b) and (c) provide in relevant part:

> (b) Removal or alteration of copyright management information -- No person shall, without the authority of the copyright owner or the law --
> (1) intentionally remove or alter any copyright management information, . . .or
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phono records, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.
> (c) Definition -- As used in this section, the term "copyright management information" means ...:
> ...
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

## C.    Defendants' Defenses

Defendants set forth 15 affirmative defenses:

A.    The complaint fails to state a claim for which relief can be granted.
B.    Plaintiff has not complied with the statutory requirements of the Copyright Act.
C.    Plaintiff's complaint is barred by the applicable statute of limitations.
D.    Plaintiff's complaint is barred by the doctrine of laches.
E.    Plaintiff's complaint is barred by the doctrine of waiver.
F.    Plaintiff's copyright registrations are invalid.
G.    The subject works are not original, are not copyrightable, and are therefore not entitled to copyright protection.
H.    To the extent that the alleged infringements occurred prior to the registrations, the plaintiff's damage remedies are limited.
I.    The allegedly infringing works are not substantially similar to plaintiff's works.



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-4-

J.  To the extent that defendants infringed any copyrighted works owned by plaintiff, such infringement was innocent, and plaintiff is entitled to no more than the minimum damages permitted under the Copyright Act.

K.  Any copying of plaintiff's purported works (which copying is expressly denied) constituted a mere <u>de minimus</u> use of such works.

L.  To the extent that defendants utilized any copyrighted works owned by plaintiff, such use is unactionable as a fair use.  17 USC §107.

M.  Defendants are not proper parties to this action, or to claims contained in this action.

N.  Plaintiff's complaint is barred by the First Amendment to the United States Constitution.

O.  Plaintiff's copyright infringement claims are purely equitable in nature, and no right to trial by jury exists.

## III.  ACTIVITIES IN REGARD TO THE SUIT

### A.  Mr. Gordon's Initiation of Litigation

The primary basis for defendants' claim for fees is their argument that there was no reasonable basis for Mr. Gordon's copyright claims.  Although the reasonable bases for the claims are more fully set forth in the summary judgment papers and exhibits, a review of the actions prior to suit show that Mr. Gordon's action were well founded albeit unsuccessful.

On July 1, 2000, Mr. Gordon saw a local broadcaster airing a Nextel commercial featuring his artwork.  (Exhibit A, ¶ 8.)  His artwork appeared in 43% of the commercial.  (Exhibit 29.)  While usually in the background, one of the two illustrations fills substantially the entire screen during a portion of the commercial.  (Exhibit 12.)  Due to the relative size shown in the commercial, it was clear that Nextel had copied and enlarged Mr. Gordon's artwork in the commercial to make it more visible.[2]

---

[2] The largest version of this artwork which Mr. Gordon sells is approximately 8½"x11".



LAW OFFICES
**Brooks & Kushman P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

Mr. Gordon immediately contacted his counsel and forwarded a videotape copy of the commercial to them.  After confirming the use of Mr. Gordon's artwork in the commercial, Brooks & Kushman wrote a cease-and-desist letter to Nextel.  Nextel asked for additional time to investigate — which was granted.  Finally, on July 14, 2000, Nextel's in-house attorney wrote back stating Nextel would continue to use the commercial due to its belief that it was fair use, without any offer of payment.  (Exhibit C, ¶ 9.)

Defense of fair use is very vague defense with no specific factors that allow an easy pre-determination of its success.  Thus, it is one of the most difficult areas in copyright law to predict.  *See*, 4 NIMMER ON COPYRIGHT § 13.05 (2001).  No analysis was provided by Nextel's attorney.[3]  Legal research was undertaken by Brooks & Kushman that indicated fair use is least likely to apply in the commercial use of artwork in advertising as here.  NIMMER § 13.05[A][1][c] ("At one extreme, the defendant's use of a copyrighted work in an advertising context is probably least likely to justify a fair use defense. . . ."  (Footnotes omitted.))  Several attorneys with experience in this type of copyright claim, were consulted and all agreed that it was likely that Nextel would not be successful in its claim of fair use.  (Exhibit C, ¶ 10.)

Mr. Gordon's counsel Robert C. Brandenburg, who had previously acted on numerous occasions as an advisor to Bozell Advertising on various matters including use of artwork in commercials, was aware of the general history practice by reputable advertising agencies not to use artwork of others without obtaining a license.  Further, prior to filing suit, Mr.

BK

LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

---

[3] Defendants prevented discovery as to the basis for this contention.  *See*, Rule 26(f) Declaration and accompanying exhibits, filed May 17, 2001.

-6-

Brandenburg consulted with the general counsel for Bozell, who confirmed that fair use was not a likely successful defense.[4] (Exhibit C, ¶ 10.)

A *prima facie* case of copyright infringement was established prior to suit. Mr. Gordon's ownership of the copyright in the artwork has never been challenged in this case and that copying occurred has never been challenged. Rather, only the extent and fairness of the copying has been challenged.

Thus, Mr. Gordon, and his counsel, having established a *prime facie* case of copying and having analyzed the possible defense of fair use were justified in proceeding with their complaint against Nextel.

**B.    Pursuit Of The Claims**

As a second basis for an award of fees, defendants argued that Mr. Gordon improperly pursued his cause of action. This allegation is also untrue.

**1.    The Complaints**

After Mr. Gordon brought suit against Nextel for copyright infringement, he found that the commercial was made by Mullen. Also, an analysis of the commercial showed Mr. Gordon's copyright notice had been removed. There is a dispute as to the origin of the commercial's artwork. Defendants contend the artwork came from a chart of Mr. Gordon (Exhibit 6), while Mr. Gordon contends it was from his asserted work (Exhibit 1).

---

[4] This conclusion was later supported by both Nextel and Mullen in their contracts with their advertising agency and production company, respectively, specifically mention the obligation to obtain licenses. (Exhibit 42, ¶6.A.2., ¶6.A.3, Schedule A 9.; Exhibit 5, ¶ 8 d), blown up in Exhibit 21.) The recognition of the risk of using others' artwork is also acknowledged in the insurance policy connected with the commercial. (Exhibits 43, ¶E, Applicaton for Producers' Errors & Omissions Liability Insurance, ¶¶ 21, 24, 25, 34, 35.)

**BK**

LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

          

Nextel's "source"        The commercial (from Exh. 12)        The asserted work

Mr. Gordon's analysis (Exhibit 28) shows it came from his asserted work with a copyright notice on the artwork itself which was removed. In fact, defendants produced a copy of an enlargement (Exhibit 9) that bore the vestige of Mr. Gordon's mark (Exhibit 19).[4]

original:                     defendants' poster: 

The Court did not resolve the dispute, but certainly Mr. Gordon's analysis shows that he had a good faith reason to believe that it came from artwork where his copyright notice should have been seen in the commercial, if not removed.

Therefore, a count was added alleging removal of copyright management information (17 U.S.C. § 1202) which deals with the willful removal of copyright notices. The support for this claim is more fully set forth in the summary judgment papers.

Finally, between the filing of the Complaint and the amendment of the Complaint, Mr. Gordon became aware of a copy of the commercial being shown on the internet at

**BK**

LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

---

[4] Defendants explained this as coming from a copy they admit was made from the asserted work – but only as a trial run. They argued the copy used in the commercial was a computer edited version of the chart, which was destroyed along with the computer files.

www.adcritic.com. Then, as now, AdCritic at its site indicated that it worked in conjunction with advertising agencies in posting television advertisements. From this, it was reasonable to conclude that Mullen and/or Nextel had submitted the advertisement for posting on AdCritic. However, to further investigate prior to the August 11, 2000 filing of the Amended Complaint, a letter was sent by mail and e-mail on July 27 to AdCritic, asking AdCritic to remove the advertisement and to provide Mr. Gordon "with a written summary of how the ad came to be placed on your website including an identification of the companies and individuals involved in copies of any agreements or communications you may have had related to posting of this ad on your website." (Exhibit C, ¶¶ 11-12; Exhibit 34.)

When no response was received, a count was added alleging infringement due to placement of the ad on the internet. This count became of less importance when, after the Amended Complaint was filed, the ad was removed from the internet.

In January, 2001, the principal of AdCritic, in response to a subpoena, called and said that AdCritic had taken the ad from a broadcast. Later, in March, 2001, two weeks prior to the end of discovery, defendants finally provided an interrogatory answer stating that they had not communicated with AdCritic. (Exhibit 35.) Thus, this count was not pursued.

2.    Defenses Of Nextel

Although Mr. Gordon undertook a reasonable investigation of all of his complaint as set forth above, the same cannot be said of the actions of defendants in their defenses to the action. After being given an extension to respond to the Complaint, defendants finally answered on August 31, 2000, nearly two months after the controversy began. The answer included twelve affirmative defenses, *see* II.C, above.



LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-9-

Many of them are, on their face, frivolous. For example, the commercial was not even made until June of 2000. Mr. Gordon viewed the commercial when it was first aired in the Detroit area in the first weekend of July, 2000. He immediately contacted counsel after the 4th of July and a letter was sent to Nextel on July 7, 2000 complaining about its use. Suit was filed on July 18, 2000 after having given an extension of time to Nextel's attorney to respond to the cease-and-desist letter. Despite this short and prompt time frame for Mr. Gordon's actions, defendants alleged a violation of the three-year statute of limitations! They also alleged laches and waiver without any basis.

Although the 1995 copyright registrations were provided to Nextel with the July 7 letter, Nextel included a defense that to "[t]he extent that the alleged [2000] infringement occurred prior to the [1995] registrations, the plaintiff's damage remedies are limited."

Defendants also alleged as a defense that the infringing works were not substantially similar to Mr. Gordon's works; although what appeared in the commercials were duplicates of Mr. Gordon's illustrations and were acknowledged to have been made from Mr. Gordon's work. Defendants could not in good faith have made this defense.

Finally, defendants allege that "plaintiff's copyright claims are purely equitable in nature and no right to trial by jury exists." However, no interpretation of the Complaint which claims damages would allow this defense to be made in good faith. As any practitioner of copyright law knows, this issue was resolved in favor of the right to jury by the United States Supreme Court in *Feltner v. Columbia Pictures Television, Inc.*, 118 S.Ct. 1278 (1998).

Nextel's failure to have made a thorough analysis prior to answering is further shown by the response to Interrogatory No. 3, which asked for factual support for Nextel's defenses.



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-10-

Despite a November 28, 2000 order compelling a response, Nextel stated it had no factual

support for its defenses until a March 16, 2001 supplement, months after the Complaint was

filed and less than two weeks before the close of discovery. (Exhibits 34 and 35.)

### 3.   Mr. Gordon's Discovery

Defendants called Mr. Gordon's activities in discovery as "unnecessarily and

unreasonably aggressive and expensive." The first complaint the defendants have is that Mr.

Gordon filed an "unreasonable" motion in violation to the Federal Rules, *see* Mr. Fink's

affidavit, ¶ 8. The Magistrate Judge's Report and Recommendation (Exhibit 37) and the

resulting Stipulated Court Order (Exhibit 38) tell a different story, *i.e.*, of the justification for

the motion and the reasonableness of Mr. Gordon in working out a Stipulated Order.

| Fink Declaration<br>(Paragraph 8) | Magistrate Judge's<br>Report and Recommendation |
|---|---|
| "Plaintiff's litigation position in this case has unreasonable from the start. Plaintiff served discovery in this matter prior to the Rule 26(f) conference despite the fact that the Federal Rules of Civil Procedure do not permit this."<br><br>[This statement ignores the agreement made by Nextel's counsel to permit discovery prior to the Rule 26(f) conference. (Exhibit 45.) When Nextel refused to abide by its agreement and failed to timely answer, a Rule 37(d) motion was filed and granted by stipulation.] | "This action for copyright infringement was filed July 18, 2000. Pursuant to an agreement, plaintiff served his First Set of Document Requests and his First Set of Interrogatories on August 10 and 11, 2000. Defendant did not file timely responses, and, on September 19, 2000, plaintiff filed his Motion for Sanctions under Federal Rule of Civil Procedure 37(d). . . .<br><br>As the parties to this action have been successful in negotiating a settlement of all disputed issues raised by the Plaintiff's Motion for Sanctions, I recommend that the court enter the stipulated Order, the effect of which is to confirm their agreement and to dismiss the motion without costs or expenses awarded to either party. . . . " |



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-11-

The resulting Stipulated Order (Exhibit 38) required Nextel to supplement three interrogatories and five document requests.  It also set a date for production of documents and required the production of a withheld list.

The next concern of defendants was the number of discovery requests made in this case. However, some perspective is necessary.  First, Gordon served only six interrogatories to Nextel and Mullen, well less than the twenty provided for by the Rules.  On the other hand, Nextel served ten interrogatories on Mr. Gordon.

Neither side served requests for admissions.

In the area of document requests, Mr. Gordon served 98 document requests on Nextel and 77 on Mullen.  Nextel served 28 document requests on Mr. Gordon.  To understand the difference in numbers, some explanation is necessary.

Mr. Gordon in many instances phrased his document requests separately for each of the two posters involved so to meet the specificity required by the Rules.  Thus, the number is somewhat artificially increased given that there were two works involved.  Nextel, on the other hand, used the term "subject works" to cover both images at issue.  Also, given the many different steps involved in production, document requests were designed to elicit discovery both as to the creation of the physical objects seen in the commercial, creation of the commercial and post-production activities and other aspects of the process.  This also acted to increase the number while seeking relevant information.  Plus, each of the twelve affirmative defenses was probed resulting in an additional fifteen document requests.

Further, and not mentioned by defendants, is that Mr. Gordon actively sought to lessen any burden on defendants and work out discovery disputes.  In January 2000, when the

**BK**

LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-12-

defendants had been reticent in providing financial discovery, rather than moving to compel, Mr. Gordon agreed with defendant's request to bifurcate discovery so that financial discovery would proceed only after summary judgement motions were ruled upon.  Defendants agreed to provide the financial information, without objection, fifteen days after any summary judgment motions were ruled upon.  (Exhibits 32 and 39.)

Defendants complain that many of the requests were "vague and ambiguous, unreasonably broad and unduly burdensome and sought documents not relevant to any issue in this case."  No examples are given by defendants, but Request No. 12 to Nextel and Nextel's response, to which an answer was compelled by Court Order (Exhibit 38) is illustrative:

> **Document Request No. 12**
>       All documents and things related or referring to use of the Nextel root canal commercial.
>
> **Response**
>       Nextel objects to this document production request as vague and ambiguous and, subject to a clarification, Nextel is unable to respond.[6]

Finally, defendants expressed concern that Mr. Gordon was unreasonable in taking three depositions in this matter and requiring defendants' counsel to travel from Michigan to prepare and defend the witnesses.  Again, the context is omitted.  Defendants' identification of witnesses required by the Court and served January 29, 2000 listed 24 individual witnesses with others listed by category.  In an effort to lessen the burden of discovery, Mr. Gordon took but three 30(b)(6) depositions of Nextel, Mullen, and its production company, Crossroad Films. Since all three companies were located outside of Michigan, it is not surprising that the



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

---

[6] It is the habit of some counsel to feign ignorance of simple terms like "use" that requires requests to often be phrased a number of alternative ways to get full production.

-13-

depositions were scheduled outside of Michigan. Defendants might have a better complaint if somehow Mr. Gordon had forced defendants to appear in Michigan for their depositions.

Further, to lessen any burden, Mr. Gordon took each deposition by telephone, scheduling them at the convenience of the three deponents. The dates and locations were coordinated with defendants' counsel again to lessen any potential burden. The fact that defendants' counsel saw fit to fly out and physically attend each of these three depositions was his choice, not required by anything done by Mr. Gordon.[7]

Thus, Mr. Gordon's activities and discovery were proper. The only discovery motion filed (and granted) was that by Mr. Gordon against Nextel. Mr. Gordon's discovery activities were reasonable and necessary.

## E.   Settlement

Defendants also try to justify attorneys' fees with respect to issues of settlement.

Defendants improperly raise the offer of judgment they made in this case. While defendants did make an offer of judgment it is not relevant since Mr. Gordon did not win and receive a lesser award. The Supreme Court has addressed this precise issue in *Delta Air Lines, Inc. v. August*, 450 U.S. 346 (1981), finding that an offer of judgment is not applicable in situations where an offer of judgment has been made and plaintiff is later found to have lost the case. It is only applicable where an offer of judgment is made and plaintiff later wins the case.

---

[7] Mr. Gordon's dealings with Nextel showed that it had in-house counsel in Virginia where they were deposed. (Exhibit 14.) Crossroads also had its own counsel who attended the deposition. (Exhibit 40.) Further, the billing records show, and Mr. Gordon dealt with, counsel in New York retained by Mullin in New York, where its deposition occurred. (Exhibit 16, *see also*, defendants' Exhibit A, at, for example, 3/8/01.) These attorneys could have handled any necessary preparation in person with Detroit counsel participating by telephone.

**BK**
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-14-

450 U.S. at 352. The rationale is to avoid defendant making a token offer and then attempt to claim attorney fees when the case is lost. That is not permitted by Rule 68. 450 U.S. at 355.

Defendants also suggest that Mr. Gordon has been unreasonable in refusing to accept a $10,000 offer made by defendants and counter with an offer of $300,000. Unfortunately, the Court does not have sufficient information to determine a reasonableness of these offers and counter offers since, at defendants' request, damages discovery did not go forth in this case. (Exhibit 32.) The limited financial provided showed that millions of dollars were spent by Nextel with regard to this ad. Copyright law allows Mr. Gordon, if successful, to elect either his damages _and_ defendants' profits (to the extent they do not overlap), or at his election, statutory damages. 17 U.S.C. § 507. Mr. Gordon believed in good faith that his two works were willfully infringed, and anticipated that if infringement was found by a jury, they would award the maximum award of $300,000 as to deter other advertisers from using art work in commercials without seeking permission and continuing to use the advertisement after having been requested to stop. In fact, Mr. Gordon believes that if damage discovery had been allowed to progress, he would have been able to show substantial profits by Nextel and Mullen well in excess of $300,000, making the settlement offer more than reasonable.

The Court should consider that the offer made by defendants of $10,000 was represented by Mr. Fink to be the cost for redoing the ad. Defendants' records show that the cost for reediting was at least $41,492. (Exhibit 41). Given Brooks & Kushman's background in representing a major advertising company, it was recognized that Nextel was not being forthright in representing that the $10,000 offer corresponded to the actual costs of redoing the ad. If defendants had been forthright, settlement discussions may have gone forward in a more



LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-15-

meaningful manner. Furthermore, contrary to the Federal Rules, Nextel and Mullen never provided any indication that they had full insurance coverage for the claims under Crossroad Films' policy. This was only uncovered when documents were obtained from Crossroad Films, the production house which shot the commercial and made the copies. (Exhibit 42.)

## IV. <u>AMOUNT OF FEES</u>

Even assuming the Court should exercise its discretion in awarding attorneys fees and costs, the statute only allows a "reasonable" fee. 17 U.S.C. § 505. To establish reasonableness, defendants have the burden of proof. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). This requires establishment of a lodestar amount for a reasonable time at a reasonable rate. *Independent Living Aids v. Maxi-Aids, Inc.*, 25 F.Supp. 127 (E.D.N.Y. 1998). Defendants' requests are unjustified and unsupported by appropriate documentation.

It should be noted that underlying defendants' entire position is the argument that Mr. Gordon was aware before suit that the fair use doctrine applied. If this issue was so straightforward, why did defendants immediately file a motion for summary judgment and save themselves the fees and costs requested? Mr. Gordon believes defendants recognize that this case was not as straightforward as now being presented. However, if the Court accepts their argument in deciding to award fees, it should also recognize that defendants brought on themselves the vast majority of any requested fees by failing to mitigate their fees and expenses by moving promptly for the "obvious" judgment based upon fair and *de minimis* use.

Further there is a lack of evidentiary support for the fees requested. No direct documentary support exists for any of the costs requested. The requests are set forth in the apparent computer printout which includes no specificity as to the costs incurred, no indication



LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-16-

to whom they were paid or for what purpose other than in broad categories. This information does not allow the Court nor Mr. Gordon to analyze the alleged costs to see if they were in fact incurred, challenge any that are inappropriate, and make a determination as to whether they are reasonable. Therefore, they should be denied since defendants have the burden of proof in establishing their costs and fees.

With regard to costs, it is represented in Mr. Fink's affidavit that $16,163.00 was incurred in travel expenses, presumably for the three out of state depositions noticed by Mr. Gordon in this case. As indicated above, those depositions were set up as telephonic depositions and it was unnecessary for travel costs to be incurred. Reasonable participation by telephone or by local counsel would have also reduced the fees requested.

With regard to the request for attorney's fees, there is no submission of contemporaneous records, actual billing records or invoices to the client. All defendants produced is an undated computer printout with limited information.

Even with the limited information from the printout, it appears some of the effort was undertaken with regard to matters unnecessary to this case. For example, on 12/21/2000 Mr. Fink has an entry regarding jurisdictional and liability issues regarding "jurisdictional and liability issues re: Crossroads." Crossroads was a production company for defendants and not a party to this suit. Any investigation regarding whether Crossroads had liability to defendants and defendants had jurisdiction over Crossroads is not a cost related to defending this lawsuit. Apparently, this matter was occupying defendants' counsel since at least November 20, 2000 when research on jurisdiction issues was first noted in the computer printout, and continued at

**BK**
LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075
—
(248) 358-4400

-17-

least until December 28, 2000.  The lack of specificity in the descriptions do not permit the impermissible amount of fees to be determined.

Extensive fees are requested regarding Mr. Gordon's motion to compel, which was granted in part with the provision that each party was to bear their own costs and attorneys fees, pursuant to stipulation of the parties.  (*See* Exhibit 38).  It would be unfair and unjust to award defendants their fees incurred on a motion that the parties agreed each side would bear their own fees, especially where Mr. Gordon was successful in compelling further discovery.

The description of work is often inadequate to determine whether the amounts incurred are reasonable and should be reduced.  *Independent Living*, 25 F.Supp. at 133.

Finally, the Court should determine an appropriate loadstone for any fees awarded. Defendants seek fees from $130 per hour for an associate to $340 per hour for Mr. Fink.  Yet the latest Michigan Bar's Economic Survey (MICHIGAN BAR JOURNAL, Nov. 2000, p. 1559, Exhibit 44) shows the 50th percentile for Michigan attorneys to be $150 an hour.  Given the alleged "obvious" outcome, as argued by defendants, the Court should not award any rate greater than $150 per hour.

In summary, should the Court decide in its discretion that an award of attorney's fees and costs may be awarded, defendants have not presented sufficient information to allow the Court to determine what the reasonable amount of costs and attorney's fees.  Defendants have not submitted contemporaneous documents, underlying invoices, actual billing records or invoices to the client or insurance company.  Further, the computer printout that was submitted lacks specificity as to the nature of the activities.  It is clear that reimbursement is being sought for items that should not be reimbursed, such as investigation of a possible lawsuit by

**ßK**

LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-18-

defendants against a non-party, and costs incurred in a discovery motion that defendants lost, where they specifically gave up any request for fees. Further, the fees incurred are at an excessive hourly rate.

If the Court does award fees and believes it can do so on the records presented, it is requested that the Court take notice that it is the defendants' position – that the facts and law were clearly established at the time Nextel's attorney responded to Mr. Gordon's cease and desist letter prior to suit. Therefore, the only reasonable fees should have been those in connection with an immediate motion for summary judgment. Considering the alleged simplicity of this issue, any award should not be in excess of $5,000.00.

## V. <u>OBJECTIONS UNWARRANTED</u>

Defendants object to the Magistrate Judge's Report essentially on three bases: (1) that the Magistrate Judge's findings regarding the amount of usage of the illustrations found by the Magistrate Judge were at odds with the Court's findings; (2) that defendants were on notice of the fair use defense; and (3) that the comments on the amount of fees were erroneous.

As to the use of the illustrations, the Magistrate Judge's comments are based upon the factual representations made by Gordon in his time analysis. (Exhibit 29.) The district court, pursuant to Rule 56, was obliged to accept these factual statements in its summary judgment opinion. It apparently chose to characterize these facts with such terms as fleeting, non-focused and the like in its opinion. However, assuming the district court did not weigh the evidence, the difference between the Magistrate Judge's Report and those of the district court must only be phraseology and not substance. Thus, the objection should be rejected.

**BK**

LAW OFFICES
BROOKS & KUSHMAN P.C.
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

-19-

With regard to notice of the fair use defense as set forth above, it is admitted that Nextel's attorney made a one sentence conclusionary statement that the use was fair use. Thereafter, defendants prevented discovery with regard to that attorney and his conclusion. Gordon's reaction to the "notice" by investigating the fair use defense shows his good faith. The Magistrate Judge's comments were justified. This objection should also be rejected. As part of this objection, defendants criticize in passing the Magistrate Judge's statements regarding the several "manifestly unfounded" affirmative defenses presented by defendants. The comments are well founded as explained above.

With regard to the issue of fees, the Magistrate Judge's opinion and the facts as set forth above amply support the Magistrate Judge's finding that if the Court were to award fees, an amount substantially less than the amount sought should be awarded.

## VI. CONCLUSION

Any award of fees in this case is offensive to the concept of judicial fairness. Nextel admittedly, commercially used Mr. Gordon's copyrighted works without his permission. This loss of potential license income was not *de minimis* to Mr. Gordon however small it may seem to Nextel. Defendants' request for fees should be denied.

Respectfully submitted,

**BROOKS & KUSHMAN P.C.**

By: _____
ROBERT C. BRANDENBURG (P28660)
JOHN E. NEMAZI        (P33285)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Tel:      (248) 358-4400
*Attorneys for Plaintiff*

Dated:   __January 22, 2002__

-20-

**BK**

LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400

## CERTIFICATE OF SERVICE

I certify that I served:

**STEPHEN F. GORDON'S RESPONSIVE BRIEF IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR COSTS AND ATTORNEY'S FEES**

on <u>January 22, 2002</u> by:



___ delivering

✓ mailing (via First-Class mail)

a copy to:

    Herschel P. Fink
    Cynthia G. Thomas
    **HONIGMAN MILLER SCHWARTZ**
        **AND COHN**
    2290 First National Building
    Detroit, MI  48226

    *Attorneys for Defendants*



LAW OFFICES
**BROOKS & KUSHMAN P.C.**
1000 TOWN CENTER
TWENTY-SECOND FLOOR
SOUTHFIELD, MI 48075

(248) 358-4400